BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

MICHAEL FRANCISCO*
JAMES COMPTON*
FIRST & FOURTEENTH PLLC
800 Connecticut Ave,
Suite 300
Washington, DC 20006
(202) 754-0522
michael@first-fourteenth.com

*Motion to Appear Pro Hac Vice Forthcoming

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY SCHILLER; LUCAS ALONSO-MARTINEZ; and BYRNA TECHNOLOGIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of California,<br><br>Defendant. | Case No.:  **'25CV3411 W    VET**<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF** |

Plaintiffs Sandy Schiller, Lucas Alonso-Martinez, and Byrna Technologies, Inc. (collectively "Plaintiffs") bring this civil rights action under 42 U.S.C. § 1983 against Rob Bonta, in his official capacity as Attorney General of California, and allege as follows:

## INTRODUCTION

1.     The Second Amendment protects law-abiding citizens' right to possess—and, as an incident, to acquire—arms for lawful purposes, including self-defense. *See District of Columbia v. Heller*, 554 U.S. 570, 627, 629 (2008). Plaintiffs bring this lawsuit to challenge California's ban on the possession and sale of pepper projectile launchers. Pepper projectile launchers are a commonly-used arm that many Americans choose as a non-lethal alternative to firearms. California doesn't just deny its citizens this choice; it criminalizes the act of selling or possessing such an arm. This inexplicable ban violates the Second Amendment. In *Caetano v. Massachusetts*, a unanimous Supreme Court held that non-lethal stun guns are "arms" protected by the Second Amendment. 577 U.S. 411, 412 (2016) (per curiam). The non-lethal arms at issue here are similarly protected.

2.     Pepper projectile launchers are durable, handheld arms that generally resemble a pistol or rifle. These arms are often constructed from high-strength materials like aircraft-grade aluminum and polymer. They are equipped with $CO_2$ cartridges that expel (or "launch") chemical irritant projectiles commonly referred to as "pepperballs" or pepper projectiles. Upon contact, these projectiles rupture and release an irritant powder that temporarily incapacitates an aggressor. The impact force is comparable to a recreational paintball, and the irritant effect typically wears off within 30 minutes—thus the common characterization of pepper projectile launchers as non-lethal or less-lethal weapons.

3.     Plaintiff Byrna Technologies, Inc. ("Byrna") is the Nation's leading manufacturer of pepper projectile launchers. It brings this suit on behalf of itself and the numerous prospective customers in California who are unconstitutionally denied

1   the opportunity to choose pepper projectile launchers as a defensive weapon. Were it

2   not for the bans being challenged here, Byrna would sell its pepper projectile

3   launchers in California to a market of hundreds of thousands of purchasers seeking a

4   less-lethal alternative defensive weapon to firearms.

5        4.    Plaintiffs Sandy Schiller and Lucas Alonso-Martinez (the "Individual

6   Plaintiffs") each wish to possess and use a pepper projectile launcher as an alternative

7   to owning a firearm without subjecting themselves to criminal prosecution for such

8   possession and use.

9        5.    California law effects these criminal bans through the following

10  provisions challenged here. Under California Penal Code § 17240(a), pepper

11  projectile rounds are defined as "tear gas," and Penal Code § 17250 defines a pepper

12  projectile launcher as a "tear gas weapon." Penal Code §§ 22810(e)(1) and (g)(1)

13  criminalize the "purchase, possess[ion], or use of any tear gas weapon that expels a

14  projectile" such as pepper projectiles. And Penal Code § 22900 makes it a crime for

15  any person or company to sell, offer for sale, or possess "any tear gas or tear gas

16  weapon" such as pepper projectile launchers. Collectively the laws challenged in this

17  case are referred to as the Pepper Projectile Launcher Bans.

18       6.    These bans are patently unconstitutional under the Second Amendment.

19  Plaintiffs respectfully request that this Court declare the Pepper Projectile Launcher

20  Bans unconstitutional and enjoin their enforcement.

**PARTIES**

21

22       7.    Plaintiff Schiller is a natural person and a citizen of the United States and

23  a resident of the State of California, residing in San Diego County. Plaintiff Schiller

24  is not prohibited under state or federal law from possessing, receiving, owning, or

25  purchasing a firearm or a less-lethal arm such as a pepper projectile launcher.

26       8.    Plaintiff Lucas Alonso-Martinez is a natural person and a citizen of the

27  United States and a resident of the State of California, residing in Orange County.

28  Plaintiff Alonso-Martinez is not prohibited under state or federal law from possessing,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

receiving, owning, or purchasing a firearm or a less-lethal arm such as a pepper projectile launcher.

9.    Plaintiff Byrna Technologies, Inc. is a Delaware corporation headquartered in Andover, Massachusetts. Byrna is a technology company dedicated to a core mission of providing safe, reliable, effective, and non-lethal arms for self-defense. Byrna manufactures and sells the most popular pepper projectile launchers in the nation, but California law currently prohibits the company from selling these arms in the State. Byrna brings this case on behalf of itself and its many customers and would-be customers who are unconstitutionally denied their choice of defensive arm. *See Craig v. Boren*, 429 U.S. 190, 192–97 (1976).

10.    Defendant Rob Bonta is the Attorney General of the State of California, and is sued herein in his official capacity. The Attorney General is the "chief law officer of the State" of California and has a duty "to see that the laws of the State are uniformly and adequately enforced." CAL. CONST. art. V, § 13. The Attorney General is head of the California Department of Justice, which enforces state laws challenged in this case related to the sale, transfer, possession, and ownership of arms like pepper projectile launchers. The Attorney General maintains an office in San Diego, California.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under 42 U.S.C. § 1983. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1343 because Plaintiffs' claims seek redress for the deprivation, under color of any State law, of rights secured by the Second Amendment to the Constitution.

12.    Venue is proper under 28 U.S.C. § 1391(b)(2) because, as set forth in this complaint, California's ban on pepper projectile launchers will restrict Plaintiffs Schiller and Alonso-Martinez from buying, and Plaintiff Byrna from selling, pepper projectile launchers in this district.

**GENERAL ALLEGATIONS**

13.     Plaintiffs bring this action to enjoin the California Pepper Projectile Launcher Bans.

14.     Pepper projectile launchers provide citizens with a safe, effective, and reliable non-lethal self-defense weapon. Many citizens find it advantageous to have a less-lethal self-defense option instead of taking on the burdens associated with owning a traditional firearm. These launchers thus fulfill a real-world need by giving citizens the unique ability to incapacitate a threat from a distance without resorting to lethal force.

15.     The primary advantage of a less-lethal weapon is its ability to neutralize a threat and protect one's family without the risk of causing permanent harm or death to either. Modern pepper projectile launchers achieve this at distances of 60 feet or more, allowing the user to maintain a safe standoff while projecting force with precision. For many law-abiding citizens, carrying a firearm for self-defense is not a practical or desirable option, yet these individuals have the same fundamental right to defend themselves. Pepper projectile launchers provide this critically needed defensive capability. California's ban, however, inexplicably denies its citizens a viable, effective, and less-lethal choice for defense of self, family and home.

16.     Byrna is the leading manufacturer of pepper projectile launchers in the United States. Byrna's safe, reliable, and proven weapons are designed with ample stopping power to disarm, disable, and deter a would-be assailant. This temporary incapacitation—which causes no permanent injury—creates a critical window of time for ordinary citizens and their families to get out of harm's way and escape to safety.

**Technical Characteristics of Pepper Projectile Launchers and Projectiles**

17.     Unlike conventional firearms, pepper projectile launchers function exclusively using standard $CO_2$ cartridges or other compressed gases, containing no gunpowder or explosive mechanism whatsoever. The launcher's primary defensive purpose and function, as it is commonly sold and understood, is to deliver irritant

projectiles to temporarily incapacitate an aggressor. The launchers that Byrna offers to civilians are manually operated, requiring a separate trigger pull for each projectile fired, and the magazine for the most popular civilian model holds only five projectiles. Mechanically, these features position pepper projectile launchers alongside recreational paintball or airsoft markers—not firearms. Roughly 90 percent of the launchers Byrna sells are pistols, and rifles constitute the remaining 10 percent.

18.    A standard pepper projectile round consists of a thin, frangible polymer shell—typically made from polystyrene—designed to rupture on impact. Inside, manufacturers like Byrna load a measured charge of irritant powder together with an inert filler material. Upon impact, the shell breaks and disperses the powder, delivering a precisely metered irritant dose while the lightweight fragments pose minimal penetrative or blunt-force hazard.

19.    The active ingredient in pepper projectiles is typically oleoresin capsicum (OC), a pharmaceutical-grade chili extract, or its synthetic equivalent, pelargonic acid vanillylamide (PAVA). These agents are capsaicinoids that regulatory and medical literature classify as non-lethal. They produce intense but temporary neurological effects that typically resolve within 30 minutes. These chemicals are not hazardous and cause no lasting physical effects on the aggressor. Indeed, they are unregulated by the Food and Drug Administration. In fact, because it is so commonly used by law enforcement, training courses for officers routinely involve being dosed with capsaicinoids like OC and PAVA.

20.    Each pepper projectile, weighing approximately three grams, strikes with 8–12 foot-pounds of force—one-tenth that of conventional less-lethal munitions such as 12-gauge bean-bag rounds, and comparable to a recreational paintball impact. Millions of pepper projectile rounds have been fielded in recent years with exceedingly few serious injuries, since they are specifically engineered to incapacitate through controlled irritation, and are not designed to inflict significant blunt trauma.

**Widespread Adoption and Mainstream Acceptance of**
**Pepper Projectile Launchers**

21.    Pepper projectile launchers are sold nationwide to American civilians in large numbers. Byrna alone has sold roughly 750,000 launchers in the United States as of September 2025. At least five other manufacturers (PepperBall, SABRE, Streetwise, SALT, and HERO) sell competing pepper projectile launchers in the United States. Plaintiffs are informed and believe that over 1 million pepper projectile launchers are possessed by law-abiding citizens for self-defense and other lawful purposes.

22.    Pepper projectile products are widely stocked by mainstream retailers. They are available in brick-and-mortar stores such as Sportsman's Warehouse and Bass Pro Shops, through major online marketplaces like Amazon.com, and from thousands of independent self-defense stores nationwide.

23.    In addition, many thousands of law-enforcement officers, including the Los Angeles Police Department, Los Angeles County Sheriff's Department, and several other California agencies use pepper projectile launchers. Pepper projectile launchers are likewise widely carried as a non-lethal arm by private security personnel.

24.    The widespread availability and adoption of pepper projectile launchers for lawful purposes is a nationwide phenomenon. In 48 states—including jurisdictions with some of the nation's strictest weapons laws—law-abiding citizens may lawfully purchase and possess them. California and New York are the only states that criminalize these common defensive tools for ordinary citizens.

**California Bans Pepper Projectile Launchers As "Tear Gas Weapons."**

25.    California's ban on pepper projectile launchers is accomplished through enforcement of Penal Code §§ 17240, 17250, 22810, and 22900, which classify such arms as "tear gas weapons."

26.    Penal Code § 17240(a) defines "tear gas" broadly as "any liquid, gaseous or solid substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispersed in the air." The law then defines a "tear gas weapon" to include any "shell, cartridge, or bomb" that releases tear gas upon discharge or explosion, or any "revolver, pistol, fountain pen gun … or other form of device … intended for the projection or release of tear gas." Penal Code § 17250(a), (b).

27.    Although California authorizes the possession of tear gas or tear gas weapons "solely for self-defense purposes," this authorization is limited to aerosol pepper spray cannisters that are 2.5 ounces or smaller. *See* Penal Code § 22810(e)(1). That same statute expressly prohibits the purchase, possession, or use of "any tear gas weapon that *expels a projectile*, or that expels the tear gas by any method other than an aerosol spray[.]" *Id.* (emphasis added).

28.    California law also generally criminalizes the manufacture, sale, or transport of any "tear gas weapon" that is not authorized for use in the state. Penal Code § 22900.

29.    Taken together, these laws ban the sale, purchase, possession, and use of pepper projectile launchers in California.

**Impact of the Pepper Projectile Launcher Ban on Plaintiffs**

30.    Byrna is the Nation's leading manufacturer of pepper projectile launchers. It has sold roughly 750,000 non-lethal projectile systems nationwide. While all Byrna launchers are compatible with the company's pepper projectiles, the company is prohibited from selling either the pepper rounds or any combined kit that that constitutes a pepper projectile launcher in California. Byrna's customers have expressed and are expected to continue to express a desire to purchase pepper projectile launchers for use in California. As a result of the California ban, however, its sales have been restricted solely to selling the non-lethal launcher itself along with non-chemical "kinetic" projectiles—basically, a hard, solid plastic sphere—that

purchasers can use for self-defense and other lawful purposes. Byrna has sold over 60,000 launchers in California for use with such kinetic rounds, a volume that has been severely depressed by California's Pepper Projectile Launcher Ban. Due to the ban, Byrna customers are completely prohibited from obtaining (within California or elsewhere) or possessing pepper projectile launches for use in California. Byrna brings this lawsuit on behalf of itself and its customers and prospective customers who, but for California's ban on pepper projectile launchers (and pepper projectiles), would purchase pepper projectile launchers and pepper projectiles and rely on them for self-defense and other lawful purposes.

31.     Solely on account of the Pepper Projectile Launcher ban, Byrna refrains from entering into sales for pepper projectile launchers and associated pepper projectiles for customers in California. But for the prohibition, Byrna would successfully market its products in California for citizen defensive use. Byrna suffers direct economic injury as a result of the Pepper Projectile Launcher Ban in the form of lost sales and constriction of the market for its lawful defensive products.

32.     But for the Pepper Projectile Launcher Ban, Byrna customers would obtain and possess pepper projectile launchers for use in California.

33.     Plaintiff Schiller desires to purchase a pepper projectile launcher so that she can use it for both self-defense in the home and to publicly carry for self-defense. She has refrained from purchasing a pepper projectile launcher because of California's ban.

34.     On June 12, 2025, Plaintiff Alonso-Martinez attempted to purchase a pepper projectile launcher from PepperBall.com. When he entered his Anaheim, California shipping address, the checkout page displayed the message "This item cannot be shipped to your location," citing California law. On June 13, 2025, Plaintiff Alonso-Martinez attempted to purchase a pepper projectile system sold through Amazon.com. The order was rejected for the same reason: the platform flagged the product as ineligible for shipment to California under state restrictions.

35.     These refusals arose solely from the enforcement of the Pepper Projectile Launcher Ban and constitute an immediate, ongoing, and irreparable burden on Plaintiff's ability to acquire less-lethal arms for lawful self-defense.

36.     The Individual Plaintiffs have a genuine desire to acquire and possess a pepper projectile launcher for the lawful purpose of home defense, but they have refrained from acquiring one to avoid felony prosecution, and because of the practical impossibility of purchasing the weapon in California. Were the statutory threat and retailer prohibition removed, they would immediately purchase a pepper projectile launcher and its related projectiles and keep them in their home for the purpose of lawful self-defense.

## CLAIM FOR RELIEF

## VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENTS

## (42 U.S.C. § 1983)

37.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 36.

38.     The Second Amendment protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. This fundamental right is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

39.     Plaintiffs' proposed course of conduct is covered by the text of the Second Amendment. The Individual Plaintiffs and customers of Byrna seek to purchase and possess, and Byrna seeks to sell to Plaintiffs and additional prospective customers, "bearable arms" within the Second Amendment's coverage. The Supreme Court has already defined "arms" in a manner that includes pepper projectile launchers, since they are "thing[s] that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581. Moreover, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the

founding." *Id.* at 582; *see also New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 28 (2022) ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense"). Indeed, in *Caetano v. Massachusetts*, a unanimous Supreme Court held that non-lethal stun guns are "arms" protected by the Second Amendment. 577 U.S. at 412.

40.     As a matter of Second Amendment text, the right to "keep and bear" arms includes the right to acquire them. *Nguyen v. Bonta*, 140 F.4th 1237, 1241 (9th Cir. 2025).

41.     Because Plaintiffs' proposed conduct is covered by the Second Amendment's text, it is the State's burden to justify the regulation "by demonstrating that it is consistent with the Nation's historical tradition" of regulating arms. *Bruen*, 597 U.S. at 24; *see also United States v. Rahimi*, 602 U.S. 680, 691 (2024) ("[W]hen the Government regulates arms-bearing conduct … it bears the burden to 'justify its regulation.'" (quoting *Bruen*, 597 U.S. at 24)).

42.     Ordinarily, to determine whether a historical tradition supports a regulation that implicates conduct within the plain text of the Second Amendment, this Court would have to undertake a detailed historical analysis. Here, however, the Supreme Court has already performed that analysis. In *Heller*, the Court stated that the *only* historical justification that could justify banning the possession of an arm is that the arm is both "dangerous and unusual." 554 U.S. at 627 (quotation marks omitted). Arms that are "in common use" are, by definition, neither. *Id*. (quotation marks omitted). Thus, in *Heller*, the Supreme Court held that the Second Amendment "protects the possession and use of weapons that are 'in common use at the time.'" *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627)). A law that bans the sale of— and correspondingly prevents citizens from acquiring—a weapon in common use violates the Second Amendment.

1    43.    More than one million pepper projectile launchers have been sold for

2  both civilian and institutional use; they are marketed nationwide for personal self-

3  defense by multiple manufacturers; and they are used by thousands of law-

4  enforcement officers. There can be no question that these arms are in common use. As

5  of 2012, "[h]undreds of thousands of Tasers and stun guns ha[d] been sold to private

6  citizens" who "may lawfully possess them in 45 States." *Caetano*, 577 U.S. at 420

7  (Alito, J., concurring) (quoting *People v. Yanna*, 824 N.W.2d 241, 245 (Mich. Ct.

8  App. 2012)). Those hundreds of thousands of stun guns were deemed by Justice Alito

9  to constitute "common use" in *Caetano*. So too with the more than one million pepper

10  projectile launchers at issue here.

11    44.    Separate and apart from California's inability to justify its ban in light of

12  pepper projectile launchers being in common use (and therefore not dangerous and

13  unusual), there is no other historical tradition that could possibly justify California's

14  ban on pepper projectile launchers.

15    45.    Defendant's enforcement of California's Pepper Projectile Launcher Ban

16  deprives Plaintiffs of their Second Amendment protected right to keep and bear arms

17  for lawful purposes, including self-defense.

18                **PRAYER FOR RELIEF**

19    Wherefore, Plaintiffs respectfully request:

20    1.    That this Court issue a declaratory judgment that California's ban on

21  pepper projectile launchers, implemented through California Penal Code §§ 17240(a),

22  17250, 22810(e)(1), (g)(1), and 22900, is unconstitutional under the Second

23  Amendment, both facially and as-applied;

24    2.    That this Court issue a permanent injunction enjoining Defendant,

25  Defendant's officers, agents, servants, employees, and attorneys, and other persons

26  who are in active concert or participation with Defendant from enforcing California's

27  ban on pepper projectile launchers, implemented through California Penal Code §§

28  17240(a), 17250, 22810(e)(1), (g)(1), and 22900; and

1        3.    That this Court award costs of suit, including reasonable attorneys' fees

2    under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which

3    Plaintiffs may be justly entitled.

4

5    Dated:  December 3, 2025              BENBROOK LAW GROUP, PC

6                                          By s/ *Bradley Benbrook*
7                                             BRADLEY A. BENBROOK
                                             Attorneys for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28